# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN M. PARISH,<br><br>                     Petitioner,<br><br>v.<br><br>MICHAEL MARTEL, Warden, et al.,<br><br>                    Respondents. | Case No.: 19cv0503 LAB (MSB)<br><br>**ORDER GRANTING MOTION TO DISMISS AND DENYING CERTIFICATE OF APPEALABILITY** |

## I. **INTRODUCTION**

Petitioner Stephen M. Parish, a state prisoner proceeding pro se with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition" or "Pet."), challenges the use of a prior conviction to enhance his sentence in his 2012 conviction in San Diego Superior Court case no. SCD240397 for five counts of robbery and various firearms charges. (Pet., ECF No. 1 at 13-22.) The Court has read and considered the Petition, [ECF No. 1], the Motion to Dismiss and Memorandum of Points and Authorities in Support of the Motion to Dismiss [ECF No. 6, 6-1], the Opposition to the Motion to Dismiss [ECF No. 11], the lodgments and other documents filed in this case, and the legal arguments presented by both parties. For the reasons discussed below, the motion to dismiss is **GRANTED** and the case is **DISMISSED** with prejudice.

/ / /

1

## II. FACTUAL AND PROCEDURAL BACKGROUND

On June 1, 2012, the San Diego County District Attorney's Office charged Parish with five counts of robbery, a violation of California Penal Code § 211 (counts one through 5), one count of possession of a firearm by a felon, a violation of California Penal Code § 29800(a)(1) (count six), possession of ammunition by a prohibited person, a violation of California Penal Code § 30305(a)(1) (count seven) and carrying a concealed firearm in a vehicle, a violation of California Penal Code § 25400(a)(1) (count eight). (Lodgment No. 4, ECF No. 7-11 at 56-62.) As to count eight, the information also alleged that Parish had previously been conviction of robbery, within the meaning of California Penal Code § 25400(c)(1). (*Id.*) Finally, the information alleged Parish had suffered nineteen prior convictions which made him ineligible for probation, within the meaning of California Penal Code § 1203(e)(4), nineteen prior convictions for which he had served a prison term, within the meaning of California Penal Code §§ 667.5(b) and 668, one serious felony prior conviction, within the meaning of California Penal Code §§ 667(a)(1), 668 and 1192.7(c), and one prior strike conviction, within the meaning of §§ 667(b) through (i), 668 and 1170.12. (*Id.*) One of the prior convictions alleged as a serious felony prior conviction, a prison prior and a strike prior was from 1995 in case no. SF90551. (*Id.*)

Parish entered into a plea agreement in which he pleaded guilty to robbery and was given a stipulated prison sentence. (*Id.* at 63-66.) Following a jury trial, Parish was convicted of the remaining counts. (*Id.* at 147-51.) Parish was sentenced to twenty-two years and four months in prison. (Lodgment No. 7-10 at 17.)

Parish appealed his conviction to the California Court of Appeal for the Fourth Appellate District. (Lodgment Nos. 5-7, ECF Nos. 7-13–7-15.) The state appellate court upheld his conviction in a written opinion. (Lodgment No. 8, ECF No. 7-16.) Parish then filed a petition for review in the California Supreme Court, which summarily denied the petition. (Lodgment No. 9-10, ECF No. 7-17–7-18.)

///

Over four years later, Parish filed a petition for writ of habeas corpus in the California Supreme Court which raised the same claims he raises in his current federal petition. (Lodgment No. 11, ECF No. 7-19.) The California Supreme Court denied the petition as untimely, citing *In re Robbins*, 18 Cal. 4th 770, 780 (1998). (Lodgment No. 12, ECF No. 7-20.)

## III. DISCUSSION

Parish argues that the use of his 1995 robbery conviction to enhance his sentence in his 2012 case violated his federal constitutional rights because his counsel during the 1995 case was ineffective. (Pet., ECF No. 1 at 14-22.) Respondent contends the petition is untimely. (Mot. to Dismiss, ECF No. 6-1.)

### A. Any Claim Involving Case No. SF90551 Is Barred By *Lackawanna County District Attorney v. Coss*

To the extent Parish seeks to challenge his conviction in case no. SF90551, the challenge is precluded by *Lackawanna County District Attorney v. Coss*, 532 U.S. 394 (2001). In *Lackawanna*, the Supreme Court stated:

> [W]e hold that once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. *See Daniels*, *post*, at 382, 121 S.Ct. 1578. If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

*Id*. at 403-04.

The conviction in case no. SF90551 is longer open to collateral attack because Parish is no longer in custody pursuant to that conviction. The *Lackawanna* Court identified two exceptions to the rule: (1) if the petitioner challenges the enhanced sentence by claiming that a state conviction used to enhance the sentence is invalid because counsel was not appointed, in violation of the Sixth Amendment, and (2) if federal habeas review is "effectively the first and only forum available for review of the prior conviction. *Id*. at

404-06. Neither exception applies in Parish's case. Parish was represented by counsel in case no. SF90551. (*See* Lodgment No. 2, ECF No. 7-2.) And, Parish could have challenged the validity of his conviction in state court.

### B. The Petition is Untimely

Even if *Lackawanna* did not bar Parish from contesting the validity of his 1995 conviction, the petition is untimely. Under 28 U.S.C. § 2244(d), a petitioner has one year from the date his or her conviction is final to file a petition for writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254. *See* 28 U.S.C. § 2244(d). Parish attacks the validity of his 1995 conviction on grounds that his counsel was ineffective. (Pet., ECF No. 1 at 14-20.) The Anti-Terrorism and Effective Death Penalty Act (AEDPA) became effective on April 24, 1996, and "state prisoners whose convictions became final prior to AEDPA's enactment had a one-year grace period in which to file their petitions." *Patterson v. Stewart*, 251 F.3d 1243, 1245-46 (9th Cir. 2001). Parish pleaded guilty in his 1995 case on February 17, 1995, and it appears he did not file an appeal. (Lodgment No. 4, ECF No. 7-12 at 112.) Therefore his conviction became final 60 days after judgment was rendered on April 18, 1995. *Roberts v. Marshall*, 627 F.3d 768, 771 (9th Cir. 2010). Absent tolling of the statute of limitations, Parish had until April 24, 1997 to file a federal habeas corpus petition challenging his 1995 conviction.

Parish's 2012 conviction became final on September 9, 2014, ninety days after the California Supreme Court denied Parish's petition for review in case no. SCD240397. (Lodgment No.12, ECF No. 7-20; *Wixom v. Washington*, 264 F.3d 894, 897-98 (9th Cir. 2001).) The statute of limitations for Parish's 2012 conviction therefore expired on September 9, 2015. The statute of limitations, however, is subject to both statutory and equitable tolling. *See* 28 U.S.C. § 2244(d)(1); *Calderon v. United States Dist. Court (Beeler)*, 128 F.3d 1283, 1288 (9th Cir. 1997), overruled on other grounds by *Calderon v. United States Dist. Court (Kelly)*, 163 F.3d 530, 540 (9th Cir. 1998).

/ / /

/ / /


4

19cv0503 LAB (MSB)

1. *Statutory Tolling*

28 U.S.C. § 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-convictions or other collateral review . . . is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). The only state habeas corpus petition Parish filed challenging either his 1995 conviction or his 2012 conviction was filed in the California Supreme Court on August 16, 2018, well after the statute of limitations for either conviction had expired. (Lodgment No. 11, ECF No. 7-11.) A state habeas corpus petition that is filed after the statute of limitation has expired cannot provide any tolling. *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005).

2. *Equitable tolling*

The statute of limitations under AEDPA "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). "To be entitled to equitable tolling, [Petitioner] must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007), quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Equitable tolling is unavailable in most cases, and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002).

A petitioner's mental incompetency can justify equitable tolling under certain circumstances. *Laws v. Lamarque*, 351 F.3d 919, 922-23 (9th Cir. 2003). In *Bills v. Clark*, 628 F.3d 1092 (9th Cir. 2010), the Ninth Circuit provided a two-part test to determine whether a petitioner was entitled to equitable tolling for mental incompetence:

> 1) First, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control . . . by demonstrating the impairment was so severe that either
>
> (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
>
> (b) petitioner's mental state rendered him unable personally to prepare

a habeas petition and effectuate its filing.

  2) Second, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

*Id.* at 1099-100.

The test is a stringent one. "[T]he mental impairment must be so debilitating that it is the but-for cause of [petitioner's] delay." *Yeh v. Martel*, 751 F.3d 1075, 1078 (9th Cir. 2014).

Parish seeks equitable tolling for the period 1995 through 2018. (Pet., ECF No. 1 at 4-10.) He also contends he is entitled to "further factual development" of the facts underlying his claim of equitable tolling. (*Id.*) He states he has "suffered from serious mental illness over several years," and that "as a direct result of his medications [he] suffer[ed] adverse side effects [which] rendered him mentally incompetent to file his petition." (*Id.* at 9.) In addition, he claims that from 1995 until 2012, he "was battling severe depression, substance abuse withdrawals and on and off his psych meds and . . . was mentally incapacitated and was diligent." (*Id.*) Further, he states that from 2014 until 2018 he was "mentally incompetent to assist in his defense, or rationally communicate with his jail house lawyer [and] could not understand the nature and effect of his business with respect[] to filing a state petition . . . ." (*Id.* at 10.)

The record contains the following evidence of Parish's alleged incompetence. During his interview for a probation report in 1994, he told a probation officer he was addicted to cocaine and was stealing to support his drug habit. (Lodgment No. 4 vol. 2, ECF No. 7-12 at 120.) When asked about any psychological or medical problems, Parish told a probation officer he had been to the Veteran's Administration Outpatient Clinic for treatment for his addiction to cocaine. (*Id.* at 125.) He did not mention anything about mental illness. (*Id.*) In a 1997 probation report, he told a probation officer that his life-long cocaine addiction was the reason for his criminal behavior and asked to be placed in

a rehabilitation program. (*Id.* at 135.) He did not report any mental illness when asked about psychological and medical problems, only reporting his cocaine addiction. (*Id.* at 138.) In 2003, he again told a probation officer that his cocaine addiction was the reason he committed crimes. (*Id.* at 145.) He claimed he had been diagnosed with bipolar disorder and bouts of anxiety and had been prescribed Lithium and Seroquel. (*Id.* at 150.) The probation officer writing the report did not verify this information and she recommended that "the only way to protect this community and his mother" from Parish's criminal behavior was to "incarcerate him for as long as the law provides" and that incarceration would "force a period of sobriety upon him." (*Id.* at 153.) In 2013, Parish filed a sentencing memorandum in which he mentioned his severe drug problem and noted he should be in a drug treatment program. (*Id.* at 170.) There was no mention of any mental illness. (*Id.*) He again reported to the probation officer that he had been diagnosed with bipolar disorder in 1994 and was on Prozac, Remeron and Risperdal. (*Id.* at 184.) Parish stated "[had] been dealing with mental health issues for a long time and sometimes he feels overwhelmed." (*Id.*) The probation officer did not verify this information. (*Id.* at 182.) Finally, in the habeas corpus petition he filed in the California Supreme Court in 2018, he claimed that "because of mental impairment petitioner was not able to raise [this] on his own until the assistance of a fellow inmate." (Lodgment No. 11, ECF No. 7-19 at 7.)

In response to Parish's claim that he is entitled to equitable tolling, the Court ordered Respondent to lodge Parish's medical records from the California Department of Corrections and Rehabilitation for the period 1995-2018. (ECF No. 12.) The records, which are voluminous and comprise over 6,000 pages, have been lodged under seal to protect Parish's privacy; the Court has reviewed those records. (*See*, ECF No. 17.) They indicate that Parish suffers from bipolar disorder, anxiety and depression and has been on and off medication since 2003. (ECF No. 14-13 at 7222, 7297.) In 1996, 1998, and 2000, Parish told prison authorities he did not suffer from a mental illness and had no current mental health issues. (ECF No. 14-13 at 7110, 7129, 7115, 7199-7217.) His bipolar disorder was in remission in 2004. (*Id*. at 6873, 7222, 7269, 7279, 7287, 7298.) From

2005 until 2009, Parish continued to be diagnosed as bipolar but was "stable on meds." (*Id.* at 7227, 7234, 7278, 7287.) In 2009 a doctor stated his bipolar disorder and depression was "resolved." (*Id.* at 7300, 7341.) From 2013 until 2018, the records show that although he continued to suffer from bipolar disorder, depression and anxiety, he was a frequent and active participant in group therapy where he exhibited normal mood and affect, had no observable psychiatric stress or delusions, a rational and linear thought process, was not decompensating, was oriented, calm, and in a stable mental state. (ECF No. 14-10 at 5822-6190, 6232-90, 6294-6400; ECF No. 14-11 at 6401-6425, 6458-6504.) He frequently advocated for himself and was goal directed and focused on problem solving. (*Id.*)

In short, the records establish that although Parish suffers from a mental illness for which he is receiving treatment, from 1995 until 2018 he was not so disabled that he was "unable rationally or factually to personally understand the need to timely file, or . . . unable personally to prepare a habeas petition and effectuate its filing." *Bills*, 628 F.3d at 1099-1100. Parish has not established that his mental illness was so severe that it was the but-for cause of his inability to file a habeas corpus petition during the twenty-two years since the the statute of limitations began running on his 1995 conviction or the five years since the statute of limitations began running on his 2012 conviction. *See Yeh*, 751 F.3d at 1078; *Bills*, 628 F.3d at 1099 (stating that "any standard for equitable tolling due to mental impairment must evaluate whether the petitioner's condition made it impossible to comply with the filing deadline"); *Miranda*, 292 F.3d at 1066 (stating that equitable tolling is available only in extraordinary circumstances).

4. *The Petition is Untimely*

The statute of limitations for Parish's 1995 conviction began running on April 24, 1996 and expired on April 24, 1997. The statute of limitations for Parish's 2012 case (case no. SCD240397) began running on September 9, 2014 and expired on September 9, 2015. He did not file the petition in this case until March 14, 2019. The petition is therefore untimely.

///

## V. CONCLUSION

For all the foregoing reasons, Respondent's motion to dismiss is **GRANTED** and the Petition is **DISMISSED** with prejudice.

Rule 11 of the Rules Following 28 U.S.C. § 2254 require the District Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, 28 U.S.C. foll. § 2254 (West 2019). A COA will issue when the petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253 (West 2019); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005). A "substantial showing" requires a demonstration that "'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Beaty v. Stewart*, 303 F.3d 975, 984 (9th Cir. 2002) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Here, the Court concludes Parish has not made the required showing, and therefore a certificate of appealability is denied.

**IT IS SO ORDERED.**

Dated: December 6, 2019

Larry Alan Burns
Chief Judge, United States District Court